UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSEPH L. CRAFT, DANIEL J. SMITH, RANDY L. HOWARD, KEVIN J. HOWARD, and JEREMY L. CHAMBERS, on behalf of themselves and on Behalf of all other employees similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> RAY'S, LLC and DONALD MATTHEWS, <br><br> Defendants. | Case No. 1:08-CV-0627 RLY-JMS |

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR NOTICE TO POTENTIAL PLAINTIFFS AND CONDITIONAL CERTIFICATION

#### I. Introduction

Defendants, Ray's, LLC ("Ray's") and Donald Matthews ("Matthews"), (collectively "Defendants"), by counsel, oppose Plaintiffs' Motion for Notice to Potential Plaintiffs and Conditional Certification [Doc. 29]. For the reasons stated herein, the Court should not conditionally certify this matter as a collective action under the Fair Labor Standards Act ("FLSA"), nor should the Court direct that notice be issued to potential class members.

#### II. Procedural History

This action originally was filed on May 14, 2008, as a proposed FLSA collective action lawsuit by Plaintiff Joseph Craft, in which he alleged that he was entitled to unpaid overtime. Defendants responded by filing a Motion to Dismiss or Alternatively for Summary Judgment on June 9, 2008, in which they pointed out that Craft, a former roll-

1

off driver for Ray's, cannot pursue a claim for overtime under the FLSA based on the Motor Carrier Act exemption to the FLSA. Because he is not covered by the overtime provisions of the FLSA, Craft also cannot represent a class of individuals in an FLSA overtime collective action.

In response to the Motion to Dismiss/Motion for Summary Judgment, Plaintiff moved for and obtained leave to file a First Amended Complaint. The First Amended Complaint narrowed some of the allegations regarding overtime, named three additional Plaintiffs, and also added a purported alternative state law claim for wages. Whereas the original lawsuit sought collective action status under §216(b) of the FLSA, the First Amended Complaint sought both collective action status under the FLSA and class action status with respect to the alternative state law claims, thus transforming this into a proposed "hybrid" action under federal and state law.

U.S. Magistrate Judge Jane Magnus-Stinson conducted status conferences with counsel for the parties on July 31 and August 14, 2008, in which they established a procedural schedule for this case. Plaintiffs filed a Motion for Notice to Potential Plaintiffs and Conditional Certification of the FLSA collective action on July 31, 2008, as well as a Second Amended Complaint on August 22, 2008. The Second Amended Complaint adds a fifth named Plaintiff, drops individual Defendant Donald Matthews from the state law claims, and identifies proposed sub-classes for the state law claims.

Pursuant to the Court's Amended Entry for August 14, 2008 [Doc. 32], Defendants now are filing this brief in opposition to the motion for conditional certification and notice, and Defendants will be filing their response to the Second Amended Complaint on September 8, 2008.

### III. Legal Analysis

A.    **Collective Action Certification**

Under Section 216(b) of the FLSA, any one or more employees may bring an action for unpaid overtime on behalf of "himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). A collective action under § 216(b) differs from a class action under Rule 23 in that class members must opt into a § 216(b) collective action to be bound, whereas class members must opt out of a Rule 23 class action. *Carter v. Indpls. Power & Light Co.*, 2003 WL 2314283, *2 (S.D. Ind. 2003).

A court has discretion to determine whether a representative action is an appropriate means for prosecuting an FLSA lawsuit. *Ray v. Motel 6 Operating, L.P.*, 1996 WL 938231 (D. Minn. 1996) (denying conditional certification). The method by which a court determines whether a class should be certified under § 216(b) is a matter which divides courts among two lines. Although some courts track the elements of Rule 23 and examine numerosity, commonality, typicality and adequacy of class representation, most courts in the Seventh Circuit and the Southern District of Indiana follow a two-step approach in which certification is divided into (1) the notice stage; and (2) the merits stage. *Carter* at *2-3 & n.3.

At the first stage, plaintiffs have the burden to "make a threshold showing that they are similarly situated to the employees on whose behalf they are seeking to pursue this claim." *Id.*, *3; *see also Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 627 (D. Colo. 2002) (burden on plaintiffs). Putative class members must share more than a common allegation that they were denied overtime; instead, they must put forward a common legal theory upon which each member is entitled to relief. *Sheffield v. Orius Corp.*, 211 F.R.D.

411, 413 (D. Ore. 2002) (denying conditional certification). Otherwise, certification does not serve the purpose and putative benefits of a collective action. *See Reab*, 214 F.R.D. at 627; *see also Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (collective action can benefit judicial system if it resolves common issues of law and fact arising from the same alleged activity).

Although the burden imposed upon plaintiffs at the first stage may be relatively lenient, it is neither minimal nor automatic. Indeed, courts have refused to issue notice or conditionally certify a class under a variety of circumstances. *See, e.g., Holt v. Rite Aid Corp.*, 333 F.Supp.2d 1265, 1275-76 (M.D. Ala. 2004) (evidence did not show that Plaintiffs were similarly situated or that conditional certification would create economies of scale); *Sheffield*, 211 F.R.D. at 411 (numerous factual differences among the putative class members precluded conditional certification); *St. Leger v. A.C. Nielsen Company*, 123 F.R.D. 567 (N.D. Ill. 1988) (plaintiff worked drastically different hours than other putative class members).[1]

### 1.  **Conditional Certification**

The conditional certification stage raises two related issues: (1) whether conditional certification should be granted, thus allowing others to opt-in and allowing the matter to proceed as a collective action prior to a ruling on a motion for

---

[1] With the large number of collective action cases that are decertified at the merits stage, it is imperative that courts make a critical examination at the notice stage in order to fulfill the goal of judicial efficiency and economy reflected in Rule 1 of the Federal Rules of Civil Procedure and to protect Defendants from incurring unnecessary costs and business disruption. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995) ("Based on our review of the case law, no representative class has ever survived the second stage of review."); *see also Holt*, 333 F.Supp.2d at 1274-1275 & n.4 (in denying conditional certification, district court considered evidence that it had before it at stage one because it also would have to consider that same evidence on a motion to decertify at stage two).

decertification; and (2) whether the Court should authorize the sending of notice to potential class members.

With respect to the first issue, an FLSA lawsuit may proceed as a collective action only if the Court satisfies itself that: (1) there are other employees who desire to "opt in"; (2) these putative opt-ins are "similarly situated" to Plaintiffs with respect to the claims regarding their job requirements and pay provisions; and (3) collective treatment facilitates the court's ability to resolve efficiently multiple claims in one proceeding. *See Reed v. Mobile County School Sys.*, 246 F.Supp.2d 1227, 1231 (S.D. Ala. 2003); *see also White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1312 (M.D. Ala. 2002) (quoting *Dybach v. Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)); *Horne v. United Servs. Auto. Ass'n*, 279 F.Supp.2d 1231, 1234 (M.D. Ala. 2003); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F.Supp.2d 493, 499 (D.N.J. 2000) (denying certification where litigating as a collective action "would be anything but efficient"). These preliminary inquiries are necessary, because "courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 567 (M.D. Ala. 1995) (quoting *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D.Minn. 1991)).

### 2. Court-Approved Notice

Where plaintiffs seek to send court-approved notice to potential plaintiffs at the first-tier conditional certification stage, courts should treat those requests with a higher level of scrutiny. The power to authorize the sending of notice must "be exercised with discretion and only in appropriate cases." *Horne*, 279 F.Supp.2d at 1233 (citing *Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983)); *Camper v. Home Quality Mgmt., Inc.*,

200 F.R.D. 516, 519 (D. Md. 2000) ("The relevant inquiry then is not whether the court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise that discretion.").

> We can think of no good reason for apparent judicial sponsorship of the notice, at a stage in the litigation when there has been no determination that the plaintiff's allegations have any merit, and we can think of a good reason against it, which is that the judicial imprimatur is likely to be misunderstood as a representation that the suit probably has merit[.]

*Haynes*, 696 F.2d at 886 n.2 (quoting *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982)).

**B.     The Court Should Not Grant Conditional Certification or Authorize Notice**

Applying the above legal framework, Plaintiffs have failed to make the necessary showing that this is an appropriate case in which to grant conditional certification. And even if it were, Plaintiffs also have failed to make the necessary showing that the Court should authorize notice.

**1.     Plaintiffs Have Failed to Show That Others Desire to Opt In.**

At the time that the Motion for Conditional Certification was filed on July 31, 2008, the lawsuit consisted of four named Plaintiffs and three individuals who had filed consent forms to opt into the lawsuit. All seven also signed declarations that were submitted in support of the Motion. Since then, one additional individual has been added as a named Plaintiff, but no additional declarations have been filed.

In evaluating whether the named Plaintiffs have shown that additional individuals desire to opt in, it should be noted that, immediately upon filing this lawsuit, counsel for Plaintiffs created a website, http://raystrashlawsuit.com, encouraging individuals to join

the lawsuit. In addition, counsel for Plaintiffs has run advertisements regarding the suit. (*See, e.g.*, Ex. 1).

Despite this aggressive electronic and print advertising, as well as enlisting both current and former employees as named Plaintiffs, only three people have expressed a desire to opt into the suit in addition to the named Plaintiffs. Moreover, of the seven declarants, two are brothers (Christopher and Jeff McGuire), and two others are a father and son (Randy and Kevin Howard). (*See* Ex. 2: Abernathy Dec. at ¶¶ 9-10) The fact that two of the three opt-ins are brothers and two of the five named Plaintiffs are father and son should not be lost upon the Court, as these small numbers and family connections show that this is not a proper case for conditional certification or authorizing notice. *See Wombles v. Title Max of Alabama, Inc.*, 2005 WL 3312670 (M.D.Ala. 2005) (denying conditional collective action certification in FLSA case involving five named plaintiffs and two opt-ins).

        **2.**        **The Declarants' Underlying Motivations and Lack of Credibility.**

Perhaps the reason that there has been so little interest in this lawsuit is the declarants' lack of credibility among their peers. Indeed, public records and materials from these individuals' personnel files show that several of the declarants currently are or recently have had a variety of personal, legal and financial problems, thus providing them with an incentive to distort the truth in hopes of making some easy money.

Notably, three of the declarants were fired by Ray's. Timothy Morton was discharged after he tested positive for marijuana. (Abernathy Dec., ¶ 11) Daniel Smith and Joseph Craft both were discharged after they caused thousands of dollars of damage to their trucks. (Abernathy Dec., ¶ 11) Of the other declarants, Kevin Howard and

Christopher McGuire voluntarily quit prior to the filing of this lawsuit, while Randy Howard voluntarily quit following the filing of this lawsuit. (*See* Abernathy Dec., ¶¶ 13-14)

Certified court records show that Morton also is in financial straits. On May 9, 2008, the State of Indiana filed misdemeanor charges against him for allegedly operating a motor vehicle while intoxicated with a blood alcohol level greater than .15. (Ex. 3) On or about July 22, 2008, Chase Bank USA, N.A., filed suit against him in the Johnson Circuit Court to collect more than $11,300 in debts on a credit card. (Ex. 4) According to the Chase Complaint, a demand had been made on Morton prior to filing suit, and he had failed and refused to liquidate the debt; court records show that he was served with that Complaint on July 23, 2008. Perhaps not coincidentally, Morton signed his opt-in notice on June 4, 2008, which was less than a month after his OWI arrest; he signed his declaration on July 21, 2008, two days before he was formally served with Chase lawsuit.

Morton is not the only one who has a history of financial problems. Randy Howard was having his wages garnished for an unpaid judgment until he filed for bankruptcy in 2005. (*See* Abernathy Dec., ¶ 18 & Exs. B and C; *see also* U.S. Bankruptcy Court for the Southern District of Indiana website, docket for Petition # 05-80559-FJO-7). Craft filed for bankruptcy in both 1997 and in 2006. (*See* U.S. Bankruptcy Court for the Southern District of Indiana website, dockets for Petition # 97-11541-RLB-7 and for Petition # 06-03145-FJO-7).

Plaintiffs' credibility also is at issue based upon the substance of their declarations. For example, Craft states in paragraph 7 of his declaration that Donald Matthews "published a weekly newsletter that on at least one occasion reminded Drivers

8

and Slingers to bring their lunches from home because they did not have time to stop to eat while on their routes." However, a review of the weekly newsletters that were distributed during Craft's employment with Ray's shows that they contain no such statement. (Abernathy Dec., ¶ 21).[2]

Similarly, Kevin Howard states in his declaration that he "worked as a slinger during the time period September 2005 through August 2007." In fact, Howard's employment records show that he was employed in the paint shop from September 21, 2005, to June 17, 2007. While in that position, Howard worked on first shift, and he would have been assigned on various occasions to serve as a slinger. However, Howard then worked as a second-shift mechanic from June 18, 2007 to January 18, 2008. Individuals only perform slinger duties on the first shift, not on the second shift. (Abernathy Dec., ¶ 17). [3]

### 3. Plaintiffs Have Failed to Show That They Were Subject to a Uniform Policy to Violate the FLSA.

This case also should not be conditionally certified when Defendants already have presented significant evidence to the Court that the FLSA's overtime requirements are inapplicable based on the Motor Carrier Act exemption. This is a dispositive issue – if

---

[2]   In addition to the declaration testimony of Valerie Abernathy, Defendants also are producing to Plaintiffs' counsel the referenced newsletters for review. While Defendants certainly can provide these to the Court, if required, it seems highly inefficient and inappropriate to file PDFs of nine months of internal weekly newsletters to prove a negative.

[3] Moreover, while working on the second shift, Kevin Howard regularly took lunch with the other mechanics. (Ex. 5: Corey Reed, Dec., ¶ 8).

the FLSA's overtime requirements are not even applicable, then it makes no sense for the Court to suggest through conditional certification and notice that they are.[4]

Moreover, while Plaintiffs allege that they were subject to a uniform policy (i.e., deduction of 20 minutes for lunch each day), Plaintiffs' counsel makes the false presumption that a 20-minute unpaid lunch break is a *per se* violation of the FLSA with respect to those employees who are covered by the FLSA. To the contrary, the DOL expressly has stated that meal periods of less than 30 minutes, including those of 20 minutes, may be bona fide, and not considered hours worked, under special conditions, and that such situations must be evaluated on a case-by-case basis. *See* DOL Wage and Hour Opinion Letters FLSA 2007-1NA, 2004-22, and Sept. 5, 2000. Also, although the Plaintiffs allege that they worked through their lunches, the Company's policy is to provide lunch breaks to individuals. (Abernathy Dec., ¶ 7 & Ex. A).[5]

---

[4] Defendants filed a motion to dismiss or, alternatively, for summary judgment, in immediate response to the lawsuit based upon the Motor Carrier Act exemption to the FLSA. Furthermore, consistent with the Court's Amended Minute Entry of August 14, 2008, Defendants will be refiling an expanded motion and memorandum in support of disposition of this lawsuit on September 8, 2008. It does not make sense to certify a collective action and needlessly stir up litigation with a dispositive motion pending. *Accord Reel v. Clarian Health Partners, Inc.*, 855 N.E.2d 343 (Ind. Ct. App. 2006).

[5] Although the Company has no legal obligation to pay overtime based on the Motor Carrier Act exemption, it voluntarily paid Craft and the other declarants significant amounts of overtime during their employment for work performed in excess of 40 hours per week. During his nine months of employment with Ray's, LLC, Craft received $32,986.78 in total compensation, of which $9,763.68 was overtime. (Abernathy Dec., ¶ 22 & Ex. D) If the Court were to certify collective action status and authorize judicial notice in this situation, then it simply would be punishing Defendants for their overly fair and generous treatment of employees, and it would underscore the adage that no good deed goes unpunished.

### 4. Plaintiffs Have Failed To Show That A Collective Action Would Be More Efficient

As a corollary to the point made above regarding the Company's policy, it also must be noted that the Plaintiffs and those whom they desire to represent were not all working together in an office or on a construction site. Rather, these individuals were on the honor system to take their lunches, which means that even if they were covered by the FLSA's overtime provisions, highly individualized trials would be necessary with regard to each individual's claims. Here, the named plaintiffs all claim that, as drivers or slingers, they did not get paid when they worked through lunch. However, the drivers all are operating on different routes or assignments; only rear-load drivers have slingers who work with them; there is usually only one slinger per rear-load truck; and not all rear-load drivers have slingers who work with them. (Abernathy Dec., ¶ 20).

Thus, even if they were not exempt from the FLSA's overtime provisions, a full trial would need to be conducted with respect to every individual's allegations, with jurors determining whether the individual was being honest about what he or she did or did not do on any given day, how many total hours that person worked during any given week, and whether any counterclaims or other offsets applied (such as for time recorded as having been worked and paid when the employee was not actually working).

Accordingly, in a lawsuit involving allegations similar to those in the instant case, a federal district court in Texas denied the plaintiff's motion for conditional collective action certification. *See Dudley v. Texas Waste Systems*, 2005 WL 1140605, *2 (W.D. Tex. 2005) ("Any analysis of lunch breaks will result in this court and any jury hearing individual testimony regarding whether drivers regularly took their lunch breaks, or only occasionally. If they did not take their lunch breaks, the fact finder will need to hear the

11

dates each driver actually worked through lunch and whether they needed to be compensated for an extra 30 minutes or one hour for the particular day.  Further, the fact finder will need to hear whether any driver advised management that they worked through their break and required compensation."); *see also Leger*, 123 F.R.D. at 569 (denying conditional certification in a case where individual questions of fact would predominate; plaintiff was not sufficiently similarly situated to co-workers as to allow plaintiff to represent them in a collective action).

Indeed, Plaintiffs' counsel recognizes the need for a highly individualized analysis on their website soliciting Plaintiffs for this suit.  Under the heading "How much money would I be entitled to?" they state:

> "It will take **a detailed calculation based on the facts of your case** to determine how much you may be owed."

http://raystrashlawsuit.com/FAQS.html (emphasis added).

Efficiency also will not be served by conditionally certifying this as a collective action because Plaintiffs are seeking to make this a hybrid action.  Plaintiffs want to certify this case now as an opt-in collective action and intend to move later to certify the case as an opt-out state law class action.  Far from creating efficiencies, this will only make the case more costly, more confusing and more complex.[6]

---

[6] As Defendants oppose the issuance of notice, Defendants believe it would be premature to address in this opposition brief their specific objections to and differences with the wording of the notice proposed by Plaintiffs' counsel, as well as with the request by Plaintiffs' counsel to direct Defendants to provide names, addresses, phone numbers and social security numbers of potential class members to Plaintiffs' counsel so that counsel can issue such notices.  Rather, Defendants believe that these issues should be addressed separately with the Court in the event that the Court grants the motion both to conditionally certify this case as a collective action and to issue notice.

## IV. Conclusion

As is demonstrated by the above analysis, this is not an appropriate case for conditional collective action certification under the FLSA, as named Plaintiffs have failed to make the necessary showing to support conditional certification. Moreover, even if it were appropriate to allow this case to be conditionally certified, it would be inappropriate to issue judicially sponsored notice to potential class members. Doing so not only would needlessly stir up litigation, but it would make this action less efficient, instead of more efficient.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PC

s/ Steven F. Pockrass
Kim F. Ebert, Atty. No. 6649-49
Steven F. Pockrass, Atty. No. 18836-49
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
111 Monument Circle, Suite 4600
Indianapolis, Indiana 46204
Phone:  317-916-1300
Fax:      317-916-9076
Email:kim.ebert@ogletreedeakins.com
          steven.pockrass@ogletreedeakins.com

Counsel for Defendants,
Ray's, LLC, and Donald Matthews

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of September, 2008, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following counsel by operation of Court's electronic filing system. Parties may access this filing through the Court's system.

    Philip J. Gibbons, Jr.
    pgibbons@gibbonsjones.com
    Elizabeth A. Joseph
    ejoseph@gibbonsjones.com
    Gibbons Jones, P.C.
    Two Meridian Plaza
    10401 North Meridian Street, Suite 300
    Indianapolis, IN 46290

                                                  s/ Steven F. Pockrass

6578818.1 (OGLETREE)