UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOSEPH L. CRAFT, DANIEL J. SMITH, RANDY L. HOWARD, KEVIN J. HOWARD, and JEREMY L. CHAMBERS, on behalf of themselves and on behalf of all other employees similarly situated,<br>        Plaintiffs,<br><br>vs.<br><br>RAY'S, LLC and DONALD MATTHEWS,<br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | 1:08-cv-627-RLY-JMS |

**ENTRY ON DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

This matter is now before the court on Ray's, LLC ("Ray's") and Donald Matthews' ("Matthews") (collectively, "Defendants") motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for summary judgment under Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' motion is **GRANTED**.

**I.     Background**

Joseph L. Craft ("Craft"), Daniel J. Smith ("Smith"), Randy L. Howard ("R. Howard"), Kevin J. Howard ("K. Howard"), and Jeremy L. Chambers ("Chambers") (collectively, "Plaintiffs") were all formerly employed by Ray's as either a driver or a driver's assistant (known as a "slinger"). Plaintiffs allege that Ray's has a policy of

1

deducting a twenty minute lunch break from the time and pay of all drivers and slingers each shift, regardless of whether the individual employees actually take a twenty minute break.  Plaintiffs further allege that pursuant to long-standing Department of Labor guidelines, break periods of twenty minutes or less must be counted as compensable time worked.  Accordingly, Plaintiffs claim that they, and those similarly situated to them, were not paid all wages (including overtime) earned by them, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Indiana Wage Payment statute, IND. CODE § 22-2-5 *et seq*.

Although Defendants deny Plaintiffs' allegations, that denial is not the basis for the instant motion.  Rather, Defendants contend that Plaintiffs fall under the Motor Carrier Act exemption to the FLSA's overtime requirements.  As for Plaintiffs' state law claims, Defendants argue that those claims fail as a matter of law based upon Plaintiffs' own allegations and the designated evidence.  Defendants also contend that the court lacks subject matter jurisdiction with respect to Craft's and Smith's state law claims.

## II.     Facts[1]

### A.     Ray's and Related Companies

Ray's, a for-hire carrier, is a wholly owned subsidiary of Ray's Holdings, Inc. ("Ray's Holdings").  Ray's employs the drivers and slingers who transport trash and

---

[1] Both parties' briefs contained an extensive statement of facts.  As neither party disputes the facts presented by the other party, the court offers a summary of the facts pertinent to the present motion.

recyclables for Ray's Trash Service, Inc. ("Ray's Trash Service"), also a wholly owned subsidiary of Ray's Holdings. Ray's Trash Service provides recycling and waste disposal services to residential, commercial, and industrial customers in central Indiana. It also collects and sells recyclables (primarily paper, cardboard, ferrous and non-ferrous metals, glass, and plastic) to manufacturers of recycled products. Ray's Trash Service operates the White River Recycling and Transfer Station and the 334 Recycling and Transfer Station (collectively, the "transfer stations"), as well as the recycling facility known as Ray's Recycle. All of these facilities are located in Indiana.

### B. Plaintiffs' Job Duties

Plaintiffs were all employed by Ray's as either a roll-off truck driver, a rear-load truck driver, or a slinger. A roll-off truck is a vehicle used to transport containers that "roll off" the back of the truck. A rear-load truck is a vehicle in which the waste and recyclables are loaded into the rear of the truck and are then compacted. A slinger is normally assigned to each rear-load truck and is responsible for operating the blade used to compact the trash and recyclables. Ray's does not assign its drivers and slingers to a set route; rather, the drivers and slingers receive assignments from a daily log sheet and from the dispatchers.

Drivers and slingers are responsible for transporting empty containers to customer locations and then picking up the containers once they are full of recyclables and/or trash. Some containers are dedicated for a specific type of recyclable (such as paper or cardboard), while other containers may be filled with any and all types of waste. Once a

full container is picked up, it is taken to either Ray's Recycle or one of the transfer stations.

### C. The Recycling Process

Containers which contain a mixture of trash and recyclables are unloaded onto a large concrete floor so that Ray's Trash Service employees can sort through the waste and separate any recyclables from the trash. Oftentimes, several containers from different drivers are commingled and sorted at one time. After the waste has been sorted, any trash is transported by a Ray's driver to an instate landfill or incinerator, while the recyclables are weighed, inspected for quality, and consolidated with like materials. The recyclables are then shredded, compacted, or baled in preparation for delivery to the end recipients.

Containers dedicated for a specific type of recyclable are also inspected by Ray's Trash Service employees for quality control purposes. Any items not meeting quality thresholds are removed. The remaining recyclables are then shredded, compacted, or baled in preparation for delivery to the end recipients.

Scrap metal is the only recyclable which is not processed by Ray's Recycle or one of the transfer stations. Any scrap metal discovered at these locations is transported by a Ray's driver to Farnsworth Metals, Inc. ("Farnsworth"). Farnsworth is a metal recycling facility located in Indiana and owned by Matthews. Matthews is also the majority shareholder of Ray's Holdings. Once at Farnsworth, scrap metal is unloaded onto a large concrete floor, at which time Farnsworth employees assess and grade the load. Metals within the load are then segregated by type of metal, as well as various sub-grades within

each type of metal.

The transfer stations, Ray's Recycle, and Farnsworth do not know exactly what type of materials are being transported by the Ray's drivers and slingers until the loads arrive at a facility and can be identified, assessed, and graded by facility personnel. Typically, this process is completed and the items are shipped out within 48 hours. Ray's Recycle, the transfer stations, and Farnsworth do not have the capacity to engage in extended storage of materials, so they enter into advance agreements and arrange advance scheduling whenever possible. In most cases, the end recipients purchase orders and assign release numbers for each shipment for the upcoming month. In other words, the mill buyers state in advance what they will pay for certain materials during the upcoming month and provide a set of release numbers to be used for the shipments of those materials.

Facility personnel schedule outbound shipments of materials in anticipation of full truckload quantities or else when full truckload quantities are accumulated. Bills of lading are then created with material type, destination, seller, buyer, transporter, date, weights, and purchase orders/release numbers. Ray's Recycle, the transfer stations, and Farnsworth keep extra trailers on site for various customers and will directly load those trailers as soon as items are baled to facilitate the continuous outbound flow of recyclables.

Selling recyclables to end recipients comprises approximately ten percent of Ray's Trash Service's annual revenue and nearly all of Farnsworth's annual revenue. Well over

fifty percent of the recyclables sold by Ray's Trash Service and Farnsworth are shipped to out-of-state recipients. For example, one of Ray's Trash Service's major purchasers of cardboard is Weyerhaeuser, which directs shipments to locations in Michigan, Kentucky, and Iowa. Ray's Trash Service and Farnsworth ship thousands of tons of recyclables out-of-state every year. The Ray's drivers and slingers do not transport any recyclables to out-of-state recipients.

### D. Plaintiffs' Employment Histories

Craft was employed by Ray's as a driver of a roll-off truck from approximately July 25, 2007, to April 30, 2008. Craft was involuntarily discharged from Ray's.

Smith was employed by Ray's as a driver of a roll-off truck from November 27, 2006, to February 18, 2008. Smith was involuntarily discharged from Ray's.

R. Howard first became employed by Ray's in January 1999. Three years prior to his joining the instant lawsuit as a named Plaintiff, R. Howard was a driver assigned to the delivery division. In that position, he drove large flat-bed delivery trucks, rear-load trucks, and roll-off trucks, and he had to be available to drive any of these types of trucks on any given day. On or about August 10, 2006, R. Howard became a driver in the roll-off truck division, and continued as a roll-off truck driver until he voluntarily quit his employment on or about July 25, 2008.

K. Howard was employed by Ray's from September 21, 2005, to January 18, 2008. From the beginning of his employment to June 17, 2007, K. Howard worked in the paint shop. In that position, he would have been needed on a regular basis to perform

slinger duties.  From June 18, 2007, to the end of his employment, K. Howard worked as a second-shift mechanic.  K. Howard voluntarily quit his employment with Ray's.

Chambers worked as a slinger throughout his employment with Ray's.  He was employed by Ray's from December 6, 2006, until he voluntarily quit his employment on or about June 8, 2008.

Each week, the drivers and slingers employed by Ray's sign time cards, which are used to calculate their pay.  All of the Plaintiffs signed time cards showing the specific number of hours for which they would be paid each week.  Daily totals, based on clock-in and clock-out times, minus twenty minutes for lunch, are shown on the time cards.  The gross numbers of hours worked per day reflects the twenty minute deduction, and each of the Plaintiffs was paid in accordance with what was shown on the time card that they signed.

During their employment, none of the Plaintiffs ever complained to Valerie Abernathy, the Human Resources manager, that they had ever skipped a lunch break and therefore should have been paid more than what they were paid.  Ray's has never received notice that any of the Plaintiffs filed a wage claim with the Indiana Department of Labor.  Ray's has never received notice that any wage claim has been assigned or referred by the Commissioner of Labor or the Indiana Attorney General to a private attorney.

### III.  Standard of Review

Defendants move for the dismissal of Plaintiffs' Second Amended Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6).  However, if matters outside the pleadings are presented in support of a motion under Rule 12(b)(6), the court must treat the motion as one for summary judgment.  FED. R. CIV. P. 12(d).  As Defendants go well beyond the pleadings in supporting their motion, the court will consider the present motion as one for summary judgment, rather than dismissal.

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The non-moving party, however, may not rest on mere allegations or denials in its pleadings, but rather "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).

A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Factual disputes that are irrelevant or unnecessary to the claims before the court will not alone defeat a summary judgment motion.  *Id.* at 247-48.  When determining whether a genuine issue of material fact exists, the court views the record and all reasonable inferences in the light most favorable to the nonmoving party.  *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003).

**IV.  Count One–FLSA**

The FLSA requires employers to pay employees one and one-half times their normal hourly wage for each hour they work in excess of forty hours per week.  29

U.S.C. § 207(a)(1). However, the overtime provisions of the FLSA do not apply to employees over whom "the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of [49 U.S.C. § 13502]." 29 U.S.C. § 213(b)(1). This exemption, commonly referred to as the Motor Carrier Act ("MCA") exemption, applies:

> to those employees . . . whose work involves engagement in activities consisting wholly or in part of a class of work which is defined: (i) [a]s that of a driver, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(b)(2). Exemptions to the FLSA "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960) (citing *Mitchell v. Lubin, McGaughy, & Assoc.*, 358 U.S. 201, 211 (1959)).

In the instant case, Plaintiffs do not dispute that they were employed as drivers and loaders and that, as such, they affected the safety of operation of motor vehicles on the public highways. Accordingly, the court need only to determine whether Plaintiffs participated in interstate commerce within the scope of their employment with Ray's. In order to meet the "interstate commerce" requirement of the MCA exemption, a driver

9

need not transport goods in interstate commerce every shift. *See* 46 Fed. Reg. 37,902 (July 23, 1981). Rather, the pertinent inquiry is whether the driver in question "is, or could be, called upon to transport a shipment in interstate commerce." *Id.* It is also not necessary for a driver to actually cross state lines. Transportation of goods within a single state is interstate in character where it forms part of a "practical continuity of movement" across state lines from the point of origin to the point of destination. *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943); 29 C.F.R. § 782.7(b)(1).

A crucial factor when considering whether the transported goods are part of a practical continuity of movement in interstate commerce is the "original and persisting intention of the shippers." *Baltimore & O.S.W.R.R. v. Settle*, 260 U.S. 166, 173-74 (1922); 29 C.F.R. § 782.7(b) (intrastate transportation can satisfy the interstate commerce requirement of the MCA exemption if the shipper has a "fixed and persisting transportation intent beyond the terminal storage point at the time of shipment."). The determination as to whether transportation performed within a single state is interstate in character must be based on the totality of the circumstances. *See Atlantic Coast Line R.R. v. Standard Oil Co. of Kentucky*, 275 U.S. 257, 268-69 (1927).

Defendants contend that Plaintiffs did participate in interstate commerce because over fifty percent of the recyclables they transported were later shipped to out-of-state recipients, generally within 48 hours. Plaintiffs, however, contend that they did not participate in interstate commerce because there was an interruption in the practical continuity of movement of the recyclables in interstate commerce and because Ray's

Trash Service and Farnsworth did not have a fixed and persisting intent to ship the recyclables out-of-state.[2] The court addresses each issue raised by Plaintiffs in turn below.

### A. Practical Continuity of Movement in Interstate Commerce

Prior to being shipped out-of-state, the recyclables transported by the Ray's drivers and slingers are inspected for quality, consolidated with like materials, and shredded, compacted, and/or baled. Plaintiffs contend that this "processing" sufficiently interrupts the practical continuity of movement in interstate commerce. To support their position, Plaintiffs cite to *Alice v. GCS, Inc.*, 2006 WL 2644958 (N.D. Ill. Sept. 14, 2006), a case in which the district court held that the separating, sorting, and commingling of waste prior to shipping it across state lines sufficiently interrupted the continuity of movement.

The rulings by federal district courts are not binding in other cases or on other district court judges, even within the same circuit. *TMF Tool Co., Inc. v. Muller*, 913 F.2d 1185, 1191 (7th Cir. 1990). Accordingly, the court declines to follow the holding of *Alice*. The district court reached its holding by analogizing the case before it to *Goldberg v. Faber Indus. Ind.*, 291 F.2d 232 (7th Cir. 1961). The court, however, does not believe that *Goldberg* is dispositive on the question of whether sorting, separating, and commingling waste sufficiently interrupts the practical continuity of movement.

---

[2] Plaintiffs do not argue that they did not engage in interstate commerce because the recyclables were shipped out-of-state by Ray's Trash Service and Farnsworth, rather than Ray's. As all three companies are related and do not seem to operate at arm's length, the court will consider Plaintiffs to be involved with the activities of Ray's Trash Service and Farnsworth.

The plaintiffs in *Goldberg* were employed by the defendant as "scrap drivers." 291 F.2d at 234. The plaintiffs' job duties entailed purchasing meat scraps from butchers, restaurants, and packing plants, and then transporting the meat scraps to the defendant's rendering plants. *Id.* There, the meats scraps were processed into grease, animal foods, and other products. *Id.* Based on these facts, the Seventh Circuit held that this processing was "sufficient to break the continuity of the transportation, thus precluding a holding that there is a through interstate movement of the meat scraps." *Id.* The court cannot agree with the conclusion of the district court in *Alice* that separating, sorting, and commingling of waste and recyclables is comparable to rendering meat scraps into grease, animal foods, and other products. In *Goldberg*, the meat scraps transported by the plaintiffs underwent significant processing and were transformed into entirely new products before being shipped out-of-state. Separating, sorting, and commingling waste and recyclables does not create a new good.

As *Goldberg* is the only case in which the Seventh Circuit addresses the practical continuity of movement in interstate commerce, the court must look to other sources for guidance. In *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217 (2d Cir. 2002), the Second Circuit resolved a case very similar to the instant case. In *Bilyou*, the plaintiffs worked as delivery drivers for Dutchess Beer Distributors, Inc. ("DBD"), a wholesale beverage distributor with a processing plant in Poughkeepsie, New York and a warehouse in Kingston, New York. *Id.* at 219. The plaintiffs loaded their trucks at DBD's New York facilities and delivered the products to customers located solely within the state of

12

New York. *Id.* at 220. Upon making deliveries, the plaintiffs collected empty product containers ("empties") from the customers, which included aluminum cans, glass and plastic containers, and returnable or refillable containers such as empty barrels, bottles, and pallets. *Id.* The plaintiffs returned the empties to either the Kingston warehouse or to a recycling center operated by Mid-Hudson Aluminum Can Recycling, Inc. ("Mid-Hudson"). *Id.* at 219-20.

The Mid-Hudson recycling center was located on the same parcel of land as the DBD processing plant in Poughkeepsie, was owned by the owners of DBD, and processed exclusively DBD products. *Id.* at 219. Mid-Hudson would purchase the glass empties from DBD, crush them, and then sell them to different suppliers in Connecticut and Pennsylvania, with shipments going out approximately three times a week. *Id.* at 220. Mid-Hudson would also purchase the aluminum empties from DBD, crush them, and sell them to suppliers in Connecticut, with shipments going out approximately three times per month. *Id.* Aluminum empties taken to the Kingston warehouse were flattened and loaded onto a trailer to be picked up by Reynolds Aluminum, which would purchase the processed aluminum empties from DBD and take them to a recycling plant in Connecticut. *Id.* at 221. The Court found that although the plaintiffs' carriage of the empties took place entirely within the state of New York, their carriage was merely one leg of a route to an out-of-state destination. *Id.* at 224. Accordingly, the Court held that plaintiffs were part of the practical continuity of movement of goods in interstate commerce and that, therefore, the MCA exemption did apply. *Id.*

Although *Bilyou* is not binding on the court, the court finds it persuasive, especially as it is consistent with policy review statements put forth by the Interstate Commerce Commission ("ICC"). In its 1992 policy statement, the ICC addressed the issue of whether goods, temporarily stored in a warehouse or distribution center before moving to their final destination, move in interstate commerce. 1992 Policy Statement, Ex Parte No. MC-207, 8 I.C.C. 2d 470, 1992 WL 122949 (May 8, 1992). In this statement, the ICC notes that goods may be repackaged or reconfigured while at the warehouse without interrupting the practical continuity of movement in interstate commerce, while processing or substantial product modification may constitute an interruption. *Id.* at *2. The recyclables at issue in the instant case were inspected, consolidated, and baled while temporarily stored at either Ray's Recycle, one of the transfer stations, or Farnsworth. The court believes that these activities fall within the categories of repackaging and reconfiguring, and therefore, do not interrupt the practical continuity of movement in interstate commerce.

### B.     Fixed and Persisting Intent

Intent "is determined by reference to the intended final destination of the shipment as that intent existed when the shipment commenced." *Project Hope v. M/V IBN SINA*, 250 F.3d 64, 74 (2d Cir. 2001). The original intention "fixes the character of the shipment for all the legs of the transport within the United States. . . . Thus, if the final intended destination at the time the shipment begins is another state, the [MCA] applies throughout the shipment, even as to a carrier that is only responsible for any intrastate leg

of the shipment." *Id.* at 74.

Plaintiffs argue that there is no fixed and persisting intent to ship the recyclables in interstate commerce because the ultimate destination of any given load of recyclables is unknown at the time it is transported by the Ray's drivers and slingers. The ICC, however, has noted that lack of knowledge as to the specific, ultimate destination of a good at the time shipment begins is not sufficient to establish that the shipper lacked a fixed and persistent intent to engage in interstate commerce. 1992 Policy Statement, 1992 WL 122949, at *5-6. Fixed and persisting intent may be established if the shipper has a factual basis for projecting out-of-state sales, rather than a mere plan to solicit sales out-of-state. *Id.* at *4.

In the instant case, Ray's Trash Service and Farnsworth did not have a "mere plan" to solicit sales out-of-state. Well over fifty percent of the recyclables sold by Ray's Trash Service and Farnsworth are sold to out-of-state recipients. In most cases, purchase agreements are executed in advance on a monthly basis. Although Ray's Trash Service and Farnsworth do not know in advance the ultimate destination of specific loads of recyclables transported by the Ray's drivers and slingers, they do know that a large portion of each load will ultimately go out-of-state. Accordingly, the court finds that Ray's Trash Service and Farnsworth have a fixed and persisting intent to ship a majority of the recyclables transported by the Ray's drivers and slingers in interstate commerce.

Although Plaintiffs never transported the recyclables across state lines, the court finds that their transportation was part of a practical continuity of movement across state

lines, with Ray's Trash Service and Farnsworth having a fixed and persisting intent to ship the recyclables in interstate commerce at the time transportation began. Accordingly, Plaintiffs did participate in interstate commerce within the scope of their employment with Ray's, which puts them within the MCA exemption to the FLSA. Defendants are entitled to summary judgment on Plaintiffs' FLSA claims as a matter of law.

## V.     Count Two–State Law Claims

### A.     Supplemental Jurisdiction

Having granted summary judgment in favor of Defendants on the FLSA claims, the court must decide whether to retain supplemental jurisdiction over the remaining state law claims. A district court may retain supplemental jurisdiction over state law claims even after it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The court is given broad discretion in determining whether it is appropriate to retain jurisdiction over the state law claims. *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 728 (7th Cir. 1998) (citing *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1250 (7th Cir. 1994)).

As a general rule, "when all federal law claims are dismissed before trial, the pendent claims should be left to the state courts. . . . A district court should have a good reason for retaining jurisdiction and therefore should make a finding as to the balance of judicial economy, convenience, fairness and comity to justify retention." *Wright*, 29 F.3d at 1252. It is appropriate for the court to retain jurisdiction over state law claims when

"substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." *Id.* Federal retention of state law claims is also appropriate where it is obvious how the state law claims should be decided. *Id.* at 1251-52.

The instant action has been pending in this court for over a year. The parties have already engaged in extensive discovery and the state law claims have been fully briefed. Remanding to state court would be a waste of judicial resources. Furthermore, the court believes that it is obvious how Plaintiffs' state law claims should be decided. Accordingly, the court elects to retain pendent jurisdiction.

### B. Indiana Code 22-2-5-1

Plaintiffs assert state law claims for violation of the Indiana Wage Payment statute, which provides that Indiana employers "shall pay each employee at least semimonthly or biweekly, if requested, the amount due to the employee." IND. CODE § 22-2-5-1(a). An employer who violates this requirement is liable for the amount due, plus up to twice that amount in liquidated damages. IND. CODE § 22-2-5-2. In support of their motion for summary judgment on these claims, Defendants argue that: (1) Plaintiffs Craft and Smith cannot bring claims under the Wage Payment statute; (2) Plaintiffs signed timecards reflecting the twenty minute deductions; (3) Plaintiffs' Wage Payment Statute claims are preempted by the FLSA. The court addresses each of these arguments in turn below.

### 1. Plaintiffs Craft and Smith

The Wage Payment statute references current employees and employees who have voluntarily left employment. IND. CODE § 22-2-5-1(b). By contrast, the Wage Claims statute references employees who have been terminated by their employer. IND. CODE § 22-2-9-2(a)(b). As it is undisputed that Craft and Smith were terminated by Ray's, they can proceed under the Wage Claims statute only. *Shelton v. Family Dollar Stores of Ind., LP*, 2007 WL 1597650, at * 10 (S.D. Ind. June 1, 2007). Craft and Smith have not pled a claim under the Wage Claims statute. In fact, claimants who proceed under the Wage Claims statute may not file a complaint in trial court, but rather must submit a claim with the Indiana Department of Labor. *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 705 (Ind. 2002). Accordingly, Defendants will be granted summary judgment on Craft's and Smith's claims under the Wage Payment statute.

### 2. Timecards

"The Wage Payment statute is a penal statute which, being in derogation of the common law, must be strictly construed." *E & L Rental Equip., Inc. v. Bresland*, 782 N.E.2d 1068, 1070 (Ind. Ct. App. 2003) (citing *Huff v. Biomet, Inc.*, 654 N.E.2d 830, 835 (Ind. Ct. App. 1995)). A plaintiff cannot recover under the Wage Payment statute unless he, by averment and proof, brings himself clearly within the terms of the statute. *Flex Let Corp. v. Vogel*, 186 N.E.2d 696, 698 (Ind. Ct. App. 1963) (citing *Standard Liquors, Inc. v. Narcowich*, 99 N.E.2d 268, 270 (Ind. Ct. App. 1951). In order to fall within the purview of the statute, a plaintiff must request that his employer pay the disputed wages.

*Id.* Such request "must be directly related to the contract of employment and must be concurrent with, if not prior to, the period of employment." *Id.*

In the instant case, Plaintiffs do not allege that they ever made a request to be paid for the twenty minutes Defendants deducted from their payable hours each day. Plaintiffs do not dispute that they signed the timecards reflecting the twenty minute deductions and were paid according to the signed timecards. Accordingly, there is no genuine issue of material fact and Defendants are entitled to summary judgment as a matter of law.

### 3. Federal Preemption

Defendants argue that the FLSA is the exclusive remedy for Plaintiffs' unpaid wage claims. Plaintiffs, however, argue that there are certain circumstances where the FLSA would not apply, allowing them to proceed under state law. As the court finds that Plaintiffs' Wage Payment statute claims are barred under the plain language of the statute, it need not address the issue of preemption.

## VI. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss or, Alternatively for Summary Judgment (Docket # 39) is **GRANTED**.

**SO ORDERED** this 29th day of September 2009.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

19

Electronic Copies to:

Kim F. Ebert
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
kim.ebert@ogletreedeakins.com

Philip J. Gibbons Jr.
GIBBONS JONES, P.C.
pgibbons@gibbonsjones.com

Andrew G. Jones
GIBBONS JONES P.C.
ajones@gibbonsjones.com

Steven F. Pockrass
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
steven.pockrass@ogletreedeakins.com