UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RANDY L. HOWARD, on behalf of himself and all other employees similarly situated,<br>　　　　Plaintiff, | )<br>)<br>) | |
| vs. | ) | 1:08-cv-627-RLY-MJD |
| RAY'S LLC,<br>　　　　Defendant. | )<br>)<br>)<br>) | |

## ENTRY DENYING CLASS CERTIFICATION AND GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION

This lawsuit has been through several phases which have added and subtracted both parties and claims. One named plaintiff, one defendant and one claim remain. Defendant has filed a summary judgment motion with respect to the remaining claim and, as explained in this entry, the court finds the motion to be well taken. Plaintiff's motion seeking class certification is untimely and without merit.

**I.  Summary Judgment Standard**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden

of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party, however, may not rest on mere allegations or denials in its pleadings, but rather "must set forth specific facts showing that there is a genuine issue for trial ." Fed. R. Civ. P. 56(e).

A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Factual disputes that are irrelevant or unnecessary to the claims before the court will not, by themselves, defeat a summary judgment motion. *Id.* at 247-48. When determining whether a genuine issue of material fact exists, the court views the record and all reasonable inferences in the light most favorable to the nonmoving party. *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003).

Summary judgment is also proper, indeed it is mandated, when it is clear that the plaintiff will be unable to satisfy the legal requirements necessary to establish his case. *See Celotex*, 477 U.S. at 322. Under this scenario, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. The moving party is, therefore, entitled to judgment as a matter of law due to the nonmoving party's failure to make a sufficient showing on an essential element of which he carried the burden of proof. *Id.*

**II. Factual Background**

The factual background of this dispute has been laid out in several of this court's previous orders, so a brief summary of the general circumstances should suffice at this point with a discussion of specific pertinent undisputed facts included in the court's legal analysis.

Defendant, Ray's, LLC ("Ray's"), is a transportation services company which picks up and transports trash and recyclables from residential and commercial customers of an affiliated waste disposal and recycling company. Plaintiff, Randy Howard, worked for Ray's from January of 1999 through July 25, 2008, when he voluntarily left its employ. He started working in Ray's "yard" in the maintenance department and later became a delivery driver in 2005 and a "roll-off" truck driver in August 2006. His work as a driver is what is most relevant to the claim he has brought in this lawsuit.

Ray's employees, who work in the yard, punch in and out at the time clock when they go to lunch. Drivers and employees known as slingers, who assist the drivers by loading the recyclables and garbage into certain types of trucks, also use the time clock to mark the start and finish of their work days, but do not punch in and out when they take their lunch breaks. Ray's expects drivers and slingers to take a twenty minute unpaid lunch break each day while out running their routes, and informs them of this at the start of their employment by describing that policy in the checklist which new employees

receive and sign. Based on the twenty minute allowance for lunch, it is the policy of Ray's to automatically deduct those twenty minutes from each of its driver's and slinger's daily time record. The time clock registers the twenty minute deduction on the employee's time card. Drivers and slingers are under no immediate supervision while on route, so the honor system applies to the time taken for lunch. Each employee reviews and signs his time card before turning it in each week to payroll. No more than twenty minutes is deducted from an employee's daily recorded time unless an employee reports that he took more than that amount of time for lunch. Any discrepancies, necessary time additions or deletions or any other problems with the amount of time reflected on an employee's time card are to be brought to the attention of Valerie Abernathy, the Human Resources Manager at Ray's, whose responsibilities include correcting any inaccuracies.

Like it did for all drivers, Ray's deducted twenty minute lunch breaks from Plaintiff's daily time record during the course of his driving career and he never took issue with that deduction until he joined this lawsuit. Backed by the affidavit testimony of several drivers and slingers, the Plaintiff contends now that, as a matter of routine, he and most drivers and slingers working at Ray's would eat their lunches as they worked. Plaintiff testified at his deposition that, the predominate reason for eating "on the run" is "[y]ou don't have enough time" because of the way route assignments are made.[1]

---

[1]What is never made clear in the record is exactly what Plaintiff means when he says there was insufficient time to eat lunch because of how routes were assigned at Ray's.

(continued...)

Plaintiff claims he developed the routine of eating while driving as a result of what he learned back in 1999 when he would occasionally be asked to leave the yard and work as a slinger. On one occasion in 1999, he noted on his time card that he had not taken any lunch on a particular day and someone at Ray's told him that he need not put such a notation on his time card because twenty minutes would be deducted regardless of whether he ate lunch or not. He never again noted on his time card that he had not taken a twenty minute lunch break, nor did he ever report working through a lunch break to Valerie Abernathy. He freely admits that he was never told not to take a lunch break.

## III. Procedural History

This lawsuit was originally filed on May 14, 2008, by one plaintiff, Joseph Craft, who sought to recover back wages and liquidated damages from Ray's and from one of its officers. Craft brought the lawsuit under the Fair Labor Standards Act ("FLSA") on behalf of himself and others similarly situated, seeking to utilize the "collective action" provision of that act, 29 U.S.C. § 216(b), which allows for notice to be given to other similarly situated employees and former employees (in this case drivers and slingers),

---

[1](...continued)
Generally, the time records indicate that the amount of time he spent on routes varied considerably day to day, generally ranging from eight to twelve hours. He mentions in his affidavit that there were times when dispatchers reprimanded Drivers for not completing their job duties within "the allotted time," but nothing more in explanation is provided. There is no evidence that Ray's would have refused to pay Howard for the additional twenty minutes it would have taken on any given day for him to complete a route if he had stopped for twenty minutes to have lunch.

allowing them to consent to or "opt-in" to the lawsuit to become plaintiffs as well. Craft alleged in the Complaint that working through lunch breaks and attending mandatory meetings caused him to be paid less than required by the FLSA.

On July 14, 2008, the court allowed an amended complaint to be filed. The First Amended Complaint added three additional named plaintiffs, including the current and sole remaining plaintiff, Randy Howard. In addition to the collective action claim under the FLSA, the First Amended Complaint was the first iteration containing a claim under Indiana Code § 22-2-5-1, the Indiana Wage Payment Statute, which claim was also alleged on behalf of a class of employees and former employees who were similarly situated. Later that same month, plaintiffs successfully moved the court for conditional certification of the collective action, allowing notice to be provided to current and former drivers and slingers whom plaintiffs claimed were similarly situated. In August 2008, a Second Amended Complaint was filed which added an additional named plaintiff.

In September 2009, this court entered its order granting summary judgment in favor of defendants on the collective action claims under the FLSA, finding that drivers and slingers were exempted from coverage under the FLSA, instead falling under the purview of the Motor Carrier Act ("MCA"). The MCA is a federal statute which provides the legal framework for operating trucks in interstate commerce and plaintiffs made no claim under the MCA. That same order granted defendants judgment on the state law claim as well; however, due to a mistake of law, the court entered an order on

January 14, 2010, altering its previous order and judgment to allow Plaintiff to maintain a claim under the Indiana Wage Payment Statute against Ray's.

Plaintiff maintains that Ray's failure to pay him for the twenty minutes that were deducted from his time card each day amounted to a violation of the Indiana Wage Payment Statute, and contends that he should be allowed to pursue this statutory claim as a class action on behalf of other drivers and slingers who are working or have worked for Ray's since May of 2006. Ray's filed its summary judgment motion on September 16, 2010 and, two weeks later, Plaintiff filed his motion seeking class certification.

**IV. Analysis**

    A. Class Certification Motion

Plaintiff filed his Motion For Class Certification on September 23, 2010. He seeks to have the following class certified:

> All Drivers and Slingers who are currently employed by Defendant or who voluntarily terminated their employment with Defendant from May 14, 2006 to the conclusion of this action.

In order to be found appropriate for class action treatment, a plaintiff's claim must be analyzed to determine whether the familiar four prerequisites of Fed. R. Civ. P. 23(a) ("Rule 23(a)") have been met, and then whether the claim can be categorized in accordance with the provisions of Fed. R. Civ. P. 23(b).

>  Rule 23(a) provides:
>
> .  (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
>  (1) the class is so numerous that joinder of all members is impracticable;
>  (2) there are questions of law or fact common to the class;
>  (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>  (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Though a district court is not prohibited from deciding the merits of a claim prior to addressing a motion seeking class certification of that claim, typically the preferred order is for the trial court to rule on a motion for class certification and then move forward to consider a motion challenging the merits of the case. *Weismueller v. Kosobucki,* 513 F.3d 784, 787 (7th Cir. 2008). This court finds that the Plaintiff's class certification motion should be denied for at least two easily identifiable reasons.

First, Plaintiff's motion is extremely untimely. His class certification motion was filed more than two years after the court allowed Plaintiff and other named plaintiffs, who have since been dismissed, to first assert a state law claim in the First Amended Complaint and also more than two years after the current Second Amended Complaint was filed. The class certification motion also comes more than nine months after the court altered its initial judgment to allow Plaintiff to pursue his claim for breach of the Wage Payment Statute, and two weeks after a summary judgment motion attacking that

8

claim was filed by Ray's.

At all relevant times, this district's Local Rule 23.1 required plaintiffs to file a motion addressing class certification within ninety days of filing a complaint.[2] Regardless of whether the court calculates the ninety day deadline starting from the date that either of the amended complaints was filed or the date that the court altered its ruling to allow Howard to pursue the state law claim, the class certification motion is significantly late. Furthermore, it is not as though plaintiffs had not considered the need to seek prompt approval of pursuing this matter on behalf of others. Promptly after filing the First Amended Complaint, plaintiffs filed a Motion for Notice to Potential Plaintiffs and Conditional Certification, but that motion addressed only the FLSA claim and made no request for class action treatment of the state law claim being asserted in the First Amended Complaint. If class certification of the state law claim was going to be sought, it would have been logical to have pursued it at that same time. In any case, it was necessary to pursue certification much sooner than the pending motion in order to remain in compliance with Local Rule 23.1 and to give the court an opportunity to address the issue prior to being presented with a ripe summary judgment motion.

Even if unnecessary delay in seeking class certification were deemed insufficient

---

[2] Effective January 1, 2011, Local Rule 23.1 no longer requires a motion for class certification be filed within ninety days of a complaint, leaving the deadline for the same to be decided as part of each lawsuit's case management plan.

to deny class certification, Plaintiff is clearly not an adequate representative of the class. Plaintiff testified in his deposition regarding his deep financial difficulties and the series of lawsuits that have been brought against him by creditors and others. Although he went through bankruptcy at one point, he testified that he forgot to list some of his debts and had to reopen the bankruptcy to deal with some of the lawsuits against him brought by creditors. Plaintiff would like to file for bankruptcy again, but is unable to do so because of the recency of his last bankruptcy filing.

Howard listed only three legal matters in response to an interrogatory in this lawsuit which sought the name, case number and jurisdiction of any civil or criminal legal proceedings he had been involved in, yet he testified to more than double that number in his deposition. His credibility is further eroded by his claim that he never took a lunch break and always worked through the allotted twenty minutes. Such a blanket claim is not only questionable on its face, but at least five other Ray's employees, with whom Plaintiff worked in the past and some of whom would be included in the class, have provided affidavit testimony to the effect that they often took lunch breaks with Plaintiff or observed him taking his lunch breaks during the course of the day.

The motivation and credibility of an individual seeking to represent absent class members is a crucial consideration when considering that individual's adequacy as a class representative. *Davidson v. Citizens Gas & Coke Utility,* 238 F.R.D. 225, 229 (S.D.Ind. 2006). Integrity and credibility are appropriate characteristics to examine when

determining if an individual would make an adequate representative because a lead plaintiff will act as a fiduciary for his absent cohorts. *Searcy v. eFunds Corp.*, 2010 WL 1337684 (N.D.Ill. Mar. 31, 2010); *Kaplan v. Pomerantz*, 132 F.R.D. 504, 508-510 (N.D.Ill. 1990). A class is not fairly and adequately represented if class members have claims which conflict or are antagonistic to the representatives, and a named plaintiff with credibility problems may be considered to have interests antagonistic to the class. *Kaplan*, 132 F.R.D. at 510.

Finally, it should be noted that this order also addresses the Defendant's summary judgment motion and, as will be explained in the following section, the court's determination on that motion is unfavorable for Plaintiff. Plaintiff was an at-will employee who impliedly accepted the terms of his employment with Ray's by continuing to work for the company for many years after gaining an understanding that his daily wage did not include payment at his hourly rate for twenty minutes of time during the day when he was expected to be taking a lunch break. He also agreed to review and sign-off on his personal time cards to verify the total of his weekly hours. Thus, the court has determined that Plaintiff has no basis to claim that he did not receive all wages due him within the time period prescribed by the Wage Payment Statute. He therefore has no claim and would not adequately represent others, if any, who might avoid a similar disqualification. Plaintiff's Motion to Certify a Class is denied.

B.  Summary Judgment Motion

In *St. Vincent Hosp. and Health Care Center, Inc. v. Steele,* 766 N.E.2d 699 (Ind. 2002), the Supreme Court of Indiana determined that the Indiana Wage Payment Statute governs both the frequency and amount an employer must pay its employees.  In *St. Vincent*, the hospital had a written agreement as to what it was to pay an employee, Dr. Robert Steele, based upon collections resulting from his provision of services.  *Id.* at 700-701.  After a proposed regulation was issued by the Health Care Financing Administration prohibiting physicians from referring Medicare and Medicaid patients to a clinical laboratory in which the physician had a financial interest, the hospital began excluding from its calculation of "collections" the monies it received from Dr. Steele's administration of chemotherapy and other medications to Medicare and Medicaid patients. *Id*. at 701.  Dr. Steele challenged the actions of the hospital and the trial court agreed that St.Vincent had breached its contract with Dr. Steele, violated the statute, and was required to pay a judgment for wages under the written agreement, as well as treble damages and attorney fees pursuant to Indiana Code § 22-2-5-2. *Id*.  The Indiana Court of Appeals upheld the trial court, as did the Indiana Supreme Court. *Id*. at 702.

In deciding the *St. Vincent* case, the court made it clear that an employee's wage is the product of a mutual decision between the employee and employer, and that the Wage Payment Statute itself does not dictate how the wage is to be calculated. *Id*. at 704 n. 4.  Whatever the wage agreed upon, the full amount due the employee must be paid in

accordance with the time period the employee and employer have agreed to or within the default statutory pay frequency requirements if no alternative arrangement was agreed to. *Id*. at 704 n. 4. Chief Justice Randall Shepard, in his separate concurrence, aptly summarized the essence of the court's ruling:

> I write separately to observe that the reason treble damages can be imposed on the employer in this case is that the court ultimately determined that the employer's grounds for reducing its payments to the employee were legally unavailing. Thus, the holding of this case is that the full amount of the employee's earnings were the "amount due him" under the statute. Had the employer's grounds for withholding a part of the employee's wages been upheld, then the employer would have already paid the full "amount due" and treble damages would not be available.

*Id.* at 706.

In the case at bar, Plaintiff does not complain about the frequency with which he was paid; he challenges the amount he was paid.[3] Applying the Supreme Court of Indiana's analysis in *St. Vincent*, it is evident that this court must determine whether Plaintiff was paid the "amount due him." Or, put another way, the court must determine whether Ray's had a legally sound basis for its automatic deduction of twenty minutes for lunch breaks regardless of whether Plaintiff took them. The short answer to the inquiry is that Ray's did pay Howard all amounts due him, because the automatic deduction of

---

[3]Plaintiff also argues that twenty minutes was not enough time to eat lunch and that the drivers should have been allowed at least thirty minutes. However, there is nothing in the Wage Payment Statute that has any bearing on the time allowed an employee for lunch.

13

twenty minutes for lunch breaks was part and parcel of the terms of employment agreed to by Plaintiff.

This is not a case that mirrors the facts in *St. Vincent*, where an employee under a written employment contract immediately identified what he believed to be a miscalculation in his pay and insisted that the employer rectify the mistake. Even if we credit Plaintiff's recollection of the day in 1999 when he wrote on his time card that he had not taken lunch and someone in a supervisory role told him that such a note was useless because the twenty minutes would be deducted regardless, he never questioned that arrangement going forward. In other words, as an at-will employee, Plaintiff agreed to the policy as a term of, or change to, his employment agreement by continuing to work under the policy without ever raising the issue until long after he left Ray's employment. *Wheeler v. Balemaster,* 601 N.E.2d 447, 448 (Ind.App. 1992)(at-will employee accepts change in employment terms by continuing to work under the new terms).

Plaintiff relies heavily on *Williams v. Riverside Community Corrections Corp.,* 846 N.E.2d 738 (Ind.App. 2006) to support his contention that immediately after he worked through his lunch break his entitlement to pay for those twenty minutes vested and could not be taken away.[4] *Williams* involved a plaintiff, Maisha Williams, who was

---

[4] One immediate flaw in Plaintiff's analysis is that, because there was no set time for lunch it would be hard to know exactly when, on any given day, he had worked through his lunch break and his entitlement to twenty minutes worth of pay accrued.

terminated from her job at a corrections center and thereafter brought an action for wages and other compensation she claimed due pursuant to Indiana's Wage Claims Statute, Indiana Code § 22-2-9-1. *Id*. at 742. At the time she started her employment with the corrections center, Williams signed an acknowledgment of her employer's policy of reducing the hourly wage of an employee to the federal minimum wage for the last payroll period prior to any voluntary or involuntary termination of that employee. The policy also dictated that there would be a forfeiture of any accrued vacation or sick time the employee may have earned. *Id.* at 741-42. When she was terminated, the corrections center issued Williams a final paycheck in compliance with its policies, reducing her hourly wage and making no payment for Williams's accrued vacation time. *Id*. at 742. After a lengthy discussion of "present vs. deferred" compensation, the Indiana Court of Appeals concluded that the employer did not have to pay the employee for the accrued vacation or sick leave, but it could not reduce the plaintiff's wage, because that wage was earned at the pay scale the parties had agreed to and her entitlement to be paid at that scale vested at the moment the work was performed. *Id*. at 752.

      This court finds *Williams* inapplicable for several reasons. First, *Williams* involves a claim under the Wage Claim Statute as opposed to the Wage Payment Statute, the significance of which is the category of employee/plaintiff which those statutes apply to. The Wage Claim Statute applies to involuntarily terminated employees and deals only with the final amount due to that employee at the time of termination. *See St. Vincent*,

766 N.E.2d at 704-05 (Wage Claim Statute applies to terminated employees while Wage Payment Statute applies to current employees and those who have voluntarily left their employment). Second, the plaintiff in *Williams* had not received paychecks during her employment wherein she was paid at the minimum wage, rather she was challenging the retroactive lowering of her wage, which reduction applied only to her final paycheck.

Of particular note should also be the Court's statement in the *Williams* decision that:

> In addressing this claim, then, we must determine (1) whether Williams' hourly wage was, indeed, a term of her employment contract and (2) if it was a term of her contract, whether it was subject to any contractual agreement providing for forfeiture upon involuntary termination.

*Id.* at 745. After determining that her hourly wage was a term of her employment, the Court went on to specifically find that the corrections center admitted that the acknowledgment forms it had its employees sign were not designed to be a contract. *Id.* at 746. Hence, the plaintiff in *Williams* had done nothing to bargain away her entitlement to her full wage for the hours she had worked during her final pay period.

Contrast those circumstances to the situation in the case at bar, where by implication Plaintiff had agreed for years to be paid based upon the time cards he reviewed and signed each week, including the twenty minute deduction for a lunch allowance. The terms of an employment contract can be implied through the actions and understandings of the parties. *Argabright v. R.H. Marlin, Inc.,* 804 N.E.2d 1161, 1167

16

(Ind.App. 2004); *Murray v. Monroe-Gregg School Dist.*, 585 N.E.2d 687 (Ind.App. 1992). Here, there is no question that Plaintiff understood that he would not be paid for twenty minutes of the total time he was away from Ray's yard and driving his routes, because he was expected to take a twenty minute lunch break during that time away from the yard. The fact that, while under no direct supervision he and others chose not to take that twenty minute lunch break does not unilaterally alter that agreement. Therefore, the second inquiry which the Court in *Williams* found to be a required part of the analysis, that being a determination of whether there was any contractual agreement that would negate the original agreement to pay a certain wage, would not result in a different conclusion in this case. When the facts are undisputed, the existence of a contract affecting the terms of employment is generally a question of law for the court, *Orr v. Westminster Village North, Inc.,* 689 N.E.2d 712, 721 (Ind. 1997), and here, there can be no question that Plaintiff had agreed to be paid an amount each day which took into account a deduction of the twenty minutes allowed for an unpaid lunch break.

Finally, though not a major chord upon which this court's decision rests, Plaintiff's interpretation of the *Williams* decision and the immediate vesting of an entitlement to pay upon an employee's exertion of labor, regardless of any workplace policies, would lead to untenable results in other situations as well. For example, assume a factory employee spends part of her lunch hour picking up litter in the company parking lot or remains on the premises after normal working hours to do the same, without any request from the

17

company that she do so.  Applying Plaintiff's analysis, after voluntarily resigning from her job she could demand to be paid her hourly wage for the time she spent laboring for the benefit of her employer by cleaning up its property.  Obviously, such a hypothetical differs in many respects from the circumstance at hand.  Nevertheless, the point made is that an employer should be able to rely on an employee, not under its immediate supervision, to follow the procedures or work rules adopted for lunches or breaks, without a fear that it can be held liable for wages under the Indiana Wage Payment Statute if the employee never informs the employer that he or she chose to work at a time when the employer does not expect, require or desire them to do so.

It is this court's responsibility to apply Indiana law as it believes the highest court in the state would apply it.  *L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561, 574 (7th Cir. 1993).  Based on the record before it and this court's interpretation of the Indiana Supreme Court's decision in the *St. Vincent* case, as a matter of law Plaintiff is not entitled to recover wages or liquidated damages under Indiana's Wage Payment Statute.  Therefore, Ray's is entitled to summary judgment on the remaining claim of the last-named plaintiff in this lawsuit.

## V. Conclusion

For the reasons discussed in this entry, Plaintiff's Motion To Certify Class (Docket # 130 is **DENIED** and Defendant's Motion for Summary Judgment (Docket # 125) is

**GRANTED**.  A separate judgment shall issue, accordingly.

**IT IS SO ORDERED** this 30th day of September 2011.

                RICHARD L. YOUNG,  CHIEF JUDGE
                United States District Court
                Southern District of Indiana

Electronic Copies to:

Kim F. Ebert
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
kim.ebert@ogletreedeakins.com

Philip J. Gibbons Jr.
GIBBONS JONES, P.C.
pgibbons@gibbonsjones.com

Andrew G. Jones
GIBBONS JONES P.C.
ajones@gibbonsjones.com

Christopher C. Murray
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
christopher.murray@ogletreedeakins.com

Steven F. Pockrass
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
steven.pockrass@ogletreedeakins.com